UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Ortiz and Causey

MARTY D. FOUST

v.      Record No. 1146-21-3

LAWRENCE BROTHERS, INC. AND
 AMERICAN INTERSTATE INSURANCE COMPANY

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 13, 2022

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Marty D. Foust, on brief), *pro se*.

(Ramesh Murthy; PennStuart, on brief), for appellees.

Marty D. Foust challenges a September 22, 2021 opinion of the Virginia Workers'

Compensation Commission denying his request for certain medical and disability benefits. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

Accordingly, the Commission's judgment is affirmed.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015)

(quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (*en banc*)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A. Prior Litigation

On April 18, 2011, Foust suffered a compensable injury by accident when he "sustained second and third degree burns to [his] chest, left elbow, abdomen/flank area, and left upper extremity." The parties stipulated that Foust was entitled to temporary total disability benefits and that his pre-injury average weekly wage was $605. Accordingly, on January 5, 2012, a deputy commissioner awarded Foust lifetime medical benefits and $403.33 per week in temporary total disability benefits based on his stipulated average weekly wage.

In November 2013, Foust filed a request for a hearing asserting that his treating physician, Dr. Kamal Ajam, had "discharged" him as a patient. Accordingly, Foust requested that the Commission order employer "to provide [him] with a new panel of pain management physicians." Following a hearing, a deputy commissioner ordered employer to provide Foust "with a new panel of pain management physicians who are willing and able to treat [him]." On review, the Commission reversed the deputy commissioner's order, finding that Foust had withdrawn "his claim for a new panel of pain management specialists."

In June 2015, employer filed a request for a hearing seeking the termination of Foust's temporary total disability benefits because he was capable of returning to his pre-injury work. Foust filed a competing request for a hearing seeking to recognize "Dr. Karvelas" as his "authorized treating physician" and for the Commission to approve certain treatments and "studies ordered by Dr. Karvelas." In addition, Foust asserted that he had suffered a stroke in May 2012, which "should be recognized as a compensable consequence" of his work-related injury. After a hearing, a deputy commissioner held that (1) Foust was incapable of returning to his pre-injury employment, (2) Dr. Karvelas was not an authorized threating physician, and (3) Foust's May 2012 stroke was not a compensable consequence of his work-related injury.

In May 2016, Foust filed a request for a hearing seeking a new treating physician. After a hearing, a deputy commissioner denied Foust's request, finding that he had not specified what type of physician he sought. On review, the Commission affirmed the deputy commissioner's opinion but noted that in correspondence Foust had requested a "neurologist." Accordingly, the Commission "treat[ed]" the letter "as a claim for a change in treating neurologists" and referred the matter to the "Claims Services Department for processing."

Following that ruling, Foust filed additional requests for hearings on December 5, 2016, February 21, 2017, and April 26, 2017. In the requests, he again asserted that he suffered "strokes" and "mini-strokes" that were compensable consequences of his work-related injury. In addition, Foust requested: (1) a change in his treating neurologist, (2) raises and vacation pay he would have received but for his injury, (3) permanent disability benefits for scarring and disfigurement, and (4) medical benefits for his "chronic pain" and "scar neuroma or tumors from [his] burn injury that caused [an] injury to [his] spine called 'thoracic arachnoid web with cord compression.'"

After a hearing on the above claims, a deputy commissioner: (1) found that Foust's claim that his stroke was a compensable consequence was barred by *res judicata*, (2) denied as non-compensable Foust's claims for benefits due to chronic pain, lost vacation pay, and lost raises, (3) denied Foust's claim for benefits to treat his thoracic arachnoid web with spinal cord compression, (4) dismissed his claim for permanent disability benefits as "not ripe for adjudication," (5) granted his request for panels of neurologists and pain management physicians, and (6) granted his request for medical treatment of his symptomatic scar neuroma. On review, the Commission affirmed the deputy commissioner's judgment. Foust appealed to this Court, which summarily affirmed the Commission's judgment. *See Foust v. Lawrence Brothers, Inc.*, No. 1647-17-3 (Va. Ct. App. Jan. 29, 2019).

B. Present Proceedings

The present proceedings arise from additional requests for hearings. On July 26, 2018, Foust sought permanent total disability benefits, payment of unpaid medical bills and prescription costs, payment to cover the costs of repairing his roof, and a medical award for kidney disease, type 2 diabetes, and a heart murmur. On November 19, 2018, Foust sought approval for platelet rich plasma (PRP) treatment recommended by Dr. Shawn Dalton-Bethea. On October 22, 2019, Foust sought an order directing employer to provide a panel of neurologists and asserted a medical malpractice claim against Dr. Dalton-Bethea for prescribing certain medication. On November 6, 2020, Foust sought an "expedited hearing" for benefits for his "body disfigurement."[1] Finally, on December 2, 2020, Foust sought benefits for five strokes he suffered between 2013 and 2016. In his pre-hearing statement, Foust listed a multitude of compensable injuries to his spine, brain, rotator cuff, lymphatic system, chest wall, syrinx, as well as for "conditions," including memory disorder, diabetes, Chiari malformation, and "23 other medical conditions." He also asserted that his pre-injury average weekly wage was $900, not $605 as the parties had stipulated originally.

After a hearing, the deputy commissioner denied Foust's claim for permanent total disability benefits, finding that he had failed to establish entitlement to such benefits under Code § 65.2-503(C). The deputy commissioner further held that, to the extent Foust's claims asserted that his brain injury and strokes were a compensable consequence of his work-related injury, those claims were barred by *res judicata*. The deputy commissioner also found that the evidence did not establish that Foust's compensable injury was "responsible for his diabetes, kidney

---

[1] Foust also filed a "post-hearing" motion requesting permanent total disability for disfigurement, scarring, and loss of use of the left arm. In an "exercise of . . . discretion," the deputy commissioner considered this "claim" in the present case because it was duplicative of matters already before the Commission.

disease or heart murmur." Foust's assertion that his accident was "responsible for everything that is wrong with him because nothing was wrong with him before he got hurt" was insufficient as a matter of law. The deputy commissioner also denied Foust's request for the costs of repairing his roof as "not legally cognizable." The deputy commissioner found employer responsible for the PRP treatment Dr. Dalton-Bethea recommended but dismissed Foust's claim for medical malpractice against Dr. Dalton-Bethea for lack of jurisdiction. He found that employer substantially had complied with its obligation to provide a panel of neurologists by authorizing an appointment with a neurologist. Finally, the deputy commissioner denied Foust's requests for partial disability benefits, medical benefits related to his strokes, and request to amend his pre-injury average weekly wage.

On review by the full Commission, Foust generally argued that the deputy commissioner erred in denying "all other claims advanced." In addition, he specifically argued that the deputy commissioner erred by failing to amend his pre-injury average weekly wage, in finding his strokes were not compensable, and in denying permanent disability benefits, including for scarring and disfigurement. After review, the Commission affirmed the deputy commissioner's reasoning and judgment. Foust appeals.

ANALYSIS

We discern five issues from Foust's assignments of error and argument. First, he argues that the Commission erred in ruling that employer had provided him a "panel of pain management physicians." Second, he challenges the Commission's ruling that his strokes were not a compensable consequence of his injury. Third, he challenges the denial of medical benefits for his "thoracic arachnoid web with cord compression." Fourth, he argues that the Commission erred by denying permanent total disability benefits for his "scarring and disfigurement." And fifth, he contends that the Commission erred in denying his motion to amend his pre-injury average weekly

- 5 -

wage.[2]  We do not consider Foust's arguments, however, because his opening brief does not comply with Rule 5A:20(e).

An opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error."  Rule 5A:20(e).  "Unsupported assertions of error 'do not merit appellate consideration.'"  *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)).  "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her."  *Id.* at 746 (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)).  "Nor is it this Court's 'function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims.'"  *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012) (alterations in original) (quoting *Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7 (1988) (*en banc*)).  To the contrary, if an appellant believes "that the [Commission] erred, Rule 5A:20(e) require[s] him 'to present that error to us with legal authority to support [his] contention.'"  *Bartley*, 67 Va. App. at 746 (third alteration in original) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008)).

"[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."  *Id.* (quoting *Sneed*, 301 S.W.3d at 615).  Consistent with those principles, we have held that a criminal defendant's failure to

---

[2] Foust's fifth assignment of error alleges that the Commission erred in its October 2016 opinion by finding that he failed to state "what type" of physician he wanted.  His argument also appears to challenge various other rulings by the Commission in 2014, 2015, 2016, and 2017.  We do not consider those arguments because "one person shall not the second time litigate . . . precisely the same question, particular controversy, or issue, which has been necessarily tried and finally determined, upon the merits, by a court of competent jurisdiction."  *Wood v. Allison Apparel Marketing, Inc.*, 11 Va. App. 352, 355 (1990) (quoting *Ward v. Charlton*, 177 Va. 101, 115 (1941)) (holding that the doctrine of *res judicata* applies to proceedings before the Commission).

comply with Rule 5A:20(e) was significant when he made "one reference" to a single case and failed to support his argument "with any legal analysis or authority from [that case] or any other source." *Id.* at 745. Consequently, we declined to consider his arguments, finding that his opening brief left this Court without a "legal prism through which to view his alleged error. *Id.* at 746.[3]

Foust's opening brief contains no standards of review or legal authority supporting his assignments of error.[4] Instead, much of his brief is devoted to general arguments that his former attorney, employer, and the Commission conspired to deny him due process, "murder" him, and "defraud" him of benefits through insurance fraud, misrepresentation, hate crimes, white collar crimes, and racketeering.[5] In support of those arguments, Foust cites the Virginia Rules of Professional Conduct and several state and federal legal authorities that govern the disqualification of judges and criminalize insurance fraud and forgery of documents submitted to the Commission.

---

[3] A *pro se* litigant "is no less bound by the rules of procedure and substantive law than a defendant represented by counsel." *Townes v. Commonwealth*, 234 Va. 307, 319 (1987) (quoting *Church v. Commonwealth*, 230 Va. 208, 213 (1985)); *see also Francis v. Francis*, 30 Va. App. 584, 591 (1999) ("Even *pro se* litigants must comply with the rules of court.").

[4] Foust was afforded several opportunities to address this and other deficiencies with his brief.

[5] Foust specifically alleges, among other things, that the deputy commissioner who rendered his initial award in 2012 "doesn't . . . exist" and entered unsigned orders, that his former attorney "sold [him] out" and helped the Commission "get away," and that the Commission secretly removed documents from his file. To the extent these arguments raise a "due process" argument, we do not consider it because it is not encompassed by any assignment of error. *See Zedan v. Westheim*, 60 Va. App. 556, 569 n.4 (2012) (refusing to consider "due process" arguments made "[t]hroughout [appellant's] brief" because they were not encompassed by an assignment of error).

None of those legal authorities, however, addresses the substance or reasoning of the Commission's rulings that are at issue on appeal.[6]

Although Foust makes a "reference" to Code §§ 65.2-500 and 65.2-503, he neither presents "legal analysis" or argument from those statutes nor explains how the Commission erred in applying them to his many claims. *Id.* at 745. Instead, his argument is filled with factual assertions and allegations, some of which are unsupported by the record,[7] and leaves this Court without a "legal prism through which to view his alleged error[s]."[8] *Id.* at 746. Thus, we find Foust's failure to comply with Rule 5A:20(e) in this case is significant, and his arguments are waived. *Jay v. Commonwealth*, 275 Va. 510, 520 (2008).

CONCLUSION

For the foregoing reasons, the Commission's judgment is affirmed.

*Affirmed.*

---

[6] To the extent Foust's allegations of fraud are intended to challenge the Commission's decision not to amend his average weekly wage, his argument is meritless. Along with finding that Foust's allegations of fraud were baseless, the Commission held that (1) Foust "ha[d] not set forth evidence to support a pre-injury average weekly wage figure of $900," and (2) his "challenge to [the] 2012 stipulation was not seasonably made" and barred by "the doctrine of laches." On appeal, Foust provides no argument or legal authority challenging those findings. *See Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 422 (2012) (declining to consider an appellant's challenge to a lower court's ruling when it did not challenge "every *legal* basis given" for the ruling).

[7] Although Foust's opening brief contains sections entitled "Material Proceedings" and "Facts, Fraud and Errors," there is no "clear and concise statement of the facts that relate to the assignments of error." Rule 5A:20(d). Rather, background information is scattered throughout his brief, often without any "references to the pages of the transcript, written statement, record, or appendix." *Id.*

[8] Moreover, much of Foust's argument appears to challenge the deputy commissioner's rulings. This Court does not have jurisdiction to review the deputy commissioner's decisions directly. Code §§ 17.1-405(2), 65.2-705(A).

- 8 -