COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Bumgardner
Argued at Salem, Virginia


LOWES OF CHRISTIANSBURG, VIRGINIA AND
 LOWES HOME CENTERS, INC./SPECIALTY
 RISK SERVICES, INC.
                                           OPINION BY
v.    Record No. 1188-01-3        JUDGE JAMES W. BENTON, JR.
                                        JANUARY 15, 2002
JENNIFER D. CLEM


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Robert M. Himmel (Monica L. Taylor; Gentry
          Locke Rakes & Moore, on brief), for
          appellants.

          Robert M. McAdam (Jones & Glenn, P.L.C., on
          brief), for appellee.


     The sole issue raised by this appeal is whether the

Workers' Compensation Commission erred in ruling that Jennifer

D. Clem's change-in-condition claim for temporary total

disability benefits beginning November 25, 1999 is barred by the

doctrine of res judicata.  We hold that the claim is not barred

and affirm the commission's award.

                              I.

     The evidence proved that in 1997 Clem suffered a

compensable injury by accident to her ankle, leg, and back that

arose out of and in the course of her employment with Lowes of

Christiansburg.  Her back injury was initially described as "a

herniated disc, left L5-S1."  The commission approved various

memoranda of agreement, which provided compensation to Clem for temporary total disability and temporary partial disability. On September 22, 1997, Dr. Lawrence I. Kleiner performed surgery on Clem for a left L5-S1 herniated disc. Clem returned to work on April 1, 1998 and received additional payments for temporary partial disability.

On July 30, 1999, Clem filed a change-in-condition claim, alleging temporary total disability from that date. Although the recording of the evidentiary hearing was destroyed, the parties stipulated that the medical records in the commission's file would constitute the record. The medical records established that a radiologist reviewed a July 7, 1999 MRI of Clem's lumbar spine and reported a "small rightward disc extrusion is suspected at L5-S1." Dr. Murray E. Joiner examined Clem, reviewed the MRI, and opined that Clem had a "new, right-sided, herniated disc at L5-S1 [that] is unrelated to her [injury by accident]." He referred Clem to Dr. Kleiner, the neurosurgeon who had previously treated Clem. Dr. Kleiner also opined that Clem had a right-sided disc herniation. In a detailed letter, Dr. Kleiner explained that he could not "say, with medical certainty, that the herniation to the right is actually resultant from" her compensable injury by accident. After reviewing Clem's medical records, Dr. Jeffrey McConnell reported, consistent with the other doctors' opinions, that "it is impossible to state that the new right L5-S1 disc herniation

-

discovered in July 1999 is in anyway causally related to the [compensable injury by] accident."

The only contrary medical evidence before the commission was a document, which had been prepared by Clem's attorney and signed by Dr. Edgar Weaver, a neurosurgeon. By marking a check on a space designated, "True," Dr. Weaver indicated that treatments Clem received for "her L5-S1, L4-L5 spine on the right and the left are due to the [injury by accident]."

On review from the deputy commissioner's denial of relief to Clem, the commission affirmed the denial. In pertinent part, the commission made the following findings and decision.

> Although Dr. Weaver agreed with the statement provided by [Clem's] counsel that all care rendered by him, including the care and treatment of the L5-S1 and L4-L5 spine on the right and the left, was due to injuries sustained on May 7, 1997, he did not indicate how he reached his conclusion, and he did not discuss the basis for his opinion.

> Unlike Dr. Weaver, Drs. Kleiner, Joiner, and McConnell have explained the basis for their conclusions. The medical evidence supports the opinions of these physicians. Therefore, we find their opinions to be more persuasive than Dr. Weaver's opinion. We note that although Dr. Kleiner agreed to defer to Dr. Weaver's opinion regarding causation, his acquiescence does not make his opinion less probative. [Clem's] current disability is based on her right-sided disc herniation, which the Deputy Commissioner found to be unrelated to the compensable injury. We agree with this finding.

-

On February 14, 2000, Clem filed another change-in-condition claim, alleging temporary total disability from November 24, 1999. Attached to the claim was a December 13, 1999 report from Dr. Weaver, which indicated Clem has severe degenerative changes at L5-S1 that require surgery and that are related to her compensable injury by accident. At the evidentiary hearing, Clem relied upon additional reports from Dr. Weaver, including a March 8, 2000 report in which Dr. Weaver opined that Clem's right side disc herniation "has little to do with her symptomatology." He also opined as follows:

> [W]hether she had a positive MRI on the right side at L5-S1 or not is immaterial as to whether or not she needs surgery. Her surgery is for severe degenerative changes at L5-S1 with mechanical/axial pain. She does not have symptoms of a unilateral disc herniation on the right or left side. Her symptoms are mechanical/axial and, clinically, she would benefit from a fusion. Therefore, the question which remains again is, are the severe degenerative changes at L5-S1 related to the accident? Since the original injury to the L5-S1 disc was job-related, then certainly the subsequent degenerative changes also must be related; and, it is these degenerative changes that are causing the majority of her symptoms which need surgery. Again, the abnormality seen on the MRI on the right side is not the primary cause of her symptoms.

Dr. Joiner affirmed a statement prepared by Lowes' attorney that indicated, "but for the new right-sided disc herniation and its resulting disability, . . . Clem [would] be capable of returning to work in either her pre-injury position or in a

-

light duty position."  At Lowes' request, Dr. Michael Dennis, a neurosurgeon, reviewed Clem's medical reports and opined that "based on the fact that [Clem] is a smoker the most probable cause of the degeneration at the L5-S1 level with secondary herniation on the right would be the patient's age and smoking history."  By contrast, Dr. Weaver further reported that the degenerative change was the cause of disability, that the "degenerative change for which the surgery is being done is related to the original injury," and that "[t]his is in distinction to a recurrent herniated disc on the other side which possibly could be unrelated to the original event."

The deputy commissioner ruled that Clem's current claim was not barred by the doctrine of res judicata and found persuasive Dr. Weaver's reports that Clem's severe degenerative changes at the L5-S1 level were causing Clem's disability and resulted from the injury by accident.  Rejecting Dr. Dennis' opinion, the deputy commissioner found that "he never examined [Clem] and reached a number of erroneous conclusions based solely upon his review of medical records."  The deputy commissioner also rejected Dr. Joiner's contrary view.

On review, the commission ruled that Lowes "waived" its challenge to the deputy commissioner's ruling that Clem "has severe degenerative changes at L5-S1 level that were traced to the original [injury by] accident and that her right-sided defect was incidental rather than a significant finding."

-

Noting that the sole issue on review was whether Clem's change-in-condition claim was barred by the doctrine of <u>res judicata</u>, the commission ruled as follows:

> We find that the issue that was before the Commission [on the first claim] is not the same as that which was before the Deputy Commissioner [on the current claim]. The issue decided by the Deputy Commissioner on [the first claim], and affirmed by the Full Commission . . . , was whether her right-sided disc herniation was related to the compensable injury. The current issue is whether [Clem's] left-sided severe degenerative changes at L5-S1 are causally related to the accident and whether the October 31, 2000 surgery for this condition was related to the degenerative changes.
>
> We further find that the matter of the request for surgery for a right-sided disc herniation is not of so similar a nature as a request for surgery for severe degenerative changes set in motion by the left-sided herniated disc as to require that it be litigated at the time of the previous hearing. We note in support of this Dr. Weaver's March 8, 2000, report indicating that [Clem's] right-sided disc herniation was essentially an irrelevant finding and not material as to whether she needed surgery for the severe degenerative changes at L5-S1 which were causing the majority of her symptoms. In addition at the time of the previous hearing, there was no recommendation for [Clem] to undergo surgery for her left-sided degenerative changes. To hold otherwise would be contrary to the change of condition process which allows a party to seek benefits as new medical circumstances or other events arise.

Thus, the commission affirmed the deputy commissioner's award.

-

II.

Lowes contends the commission "failed . . . to correctly interpret and apply the res judicata bar" principle. We disagree.

We have held that in a proper case "principles of res judicata apply to Commission decisions." K&L Trucking Co. v. Thurber, 1 Va. App. 213, 219, 337 S.E.2d 299, 302 (1985). Where applicable, the principle "bars relitigation of the same cause of action, or any part thereof which could have been litigated between the same parties and their privies." Id. "One who asserts the defense of res judicata has the burden of proving by a preponderance of the evidence that an issue was previously raised and decided by [the commission] in a prior cause of action." Fodi's v. Rutherford, 26 Va. App. 446, 449, 495 S.E.2d 503, 505 (1998).

A cause of action is instituted by a change-in-condition claim. Whitten v. Mead Paperboard, 4 Va. App. 182, 186, 355 S.E.2d 349, 350 (1987).

> Code § 65.2-101 defines a "change in condition" as "a change in the physical condition of the employee as well as a change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation." When an employee applies for reinstatement of disability benefits based upon a change in condition, the commission must determine: (1) whether a "change in condition" has occurred as defined in Code § 65.2-101, that affects the employee's capacity to work, and

-

> (2) if so, whether the change is due to a condition causally connected with the original compensable injury. Where an application for a change in condition is filed for the sole purpose of presenting additional evidence in support of a claim that has previously been denied, res judicata will bar reconsideration of the claim. However, res judicata does not bar a claim for resumption of benefits when a "change in condition," as contemplated by the Code, has occurred which has not been previously considered by the commission.

Fodi's, 26 Va. App. at 448-49, 495 S.E.2d at 504 (citations omitted).

The current change-in-condition claim was based on the existence of a severe degenerative change at the L5-S1, which the commission found to be the result of Clem's compensable injury by accident. The commission's ruling that the evidence proved a causal connection between the degenerative changes and the original injury by accident is unchallenged. The only issue to be resolved under Lowes' defense of res judicata is whether the current change-in-condition claim, which relies upon a degenerative change at L5-S1 that is related to the original compensable injury by accident, "has . . . been previously considered by the commission." Id. at 449, 495 S.E.2d at 504.

In ruling on the current change-in-condition claim, the commission found that the issue decided under the first change-in-condition claim "was whether [Clem's] right-sided disc herniation was related to the compensable injury." We have held "that the commission is entitled to interpret its own orders in

-

determining the import of its decisions . . . and to examine the opinion of the deputy commissioner as a whole in order to ascertain the result intended." Rusty's Welding Service, Inc. v. Gibson, 29 Va. App. 119, 130, 510 S.E.2d 255, 260 (1999). Furthermore, the record clearly establishes that the commission's opinion on its review of the first change-in-condition claim noted that the claim "is based on her right-sided disc herniation, which the Deputy Commissioner found to be unrelated to the compensable injury." On its review of that change-in-condition claim, the commission ruled that Clem failed to carry her burden of proving a causal connection between the alleged bodily change (i.e., the right-sided disc herniation) and the original compensable injury. That failure was fatal to her burden to prove a cognizable change in condition under Code § 65.2-101.

The evidence concerning the first change-in-condition claim established that the right-sided herniated disc was a "new" injury, which was unrelated to the original compensable injury by accident. The evidence concerning the second change-in-condition claim established that the degenerative changes at L5-S1 resulted from the injury by accident. No evidence from either proceeding established that the two claims, i.e., the right-sided disc herniation and the degenerative changes, were inextricably linked. "The barring of a cause of action 'which could have been litigated' is not directed to an

-

unrelated claim which might permissibly have been joined, but, to a claim which, if tried separately, would constitute claim-splitting." Bates v. Devers, 214 Va. 667, 670-71 n.4, 202 S.E.2d 917, 920 n.4 (1974). Because the commission's decision on the first change-in-condition claim was a final determination only on the merits of the issue whether the right-sided disc herniation resulted from the original injury by accident, the doctrine of res judicata does not bar the current change-in-condition claim where the cause of action is based upon whether degenerative changes in the L5-S1 were caused by the original injury by accident. In short, the current claim was not raised by the first change-in-condition claim and was not addressed by the medical evidence then before the commission.

Accordingly, we affirm the commission's award.

Affirmed.

-